**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CSR Technology, Inc., | ) No. CV-11-1948-PHX-GMS |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Bandspeed, Inc., | ) |
| Defendant. | ) |

Pending before the Court are Defendant Bandspeed Inc.'s ("Bandspeed") Motion to Dismiss or Transfer Venue (Doc. 9) and Plaintiff CSR Technology, Inc.'("CSR") Motion for Leave to File a Surreply (Doc. 26). For the reasons stated below Plaintiff's motion to file a surreply is granted in part, and Defendant's motion is granted in part and denied in part. The case will be transferred to the Western District of Texas.[1]

**BACKGROUND**

On August 7, 2009, Bandspeed, which sells products designed to identify and avoid wireless network interference, filed a complaint in the Western District of Texas (the "Western District Litigation") alleging that multiple companies had infringed upon two of

---

[1] Both parties have requested oral argument. The requests are denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

its patents. CSR, which supplies Bluetooth chips that are used in the devices at issue in the Western District Litigation, moved to intervene on December 9, 2009, and was granted leave to do so on March 5, 2010. On June 30, 2010, Bandspeed filed a suit in the Eastern District of Texas (the "Eastern District Litigation") asserting that another set of defendants had infringed upon the same patents. The defendants in the Eastern District litigation moved to transfer venue to the Western District of Texas, and the case was transferred on August 15, 2011. In both of the Texas cases, Bandpseed alleged that the companies infringed upon the same two patents—U.S. Patent Nos. 7,027,418 and 7,570,614 ("the '418 patent" and "the '614 patent"). These patents concern Bandspeed's technology for optimizing the performance of "frequency hopping" techniques used in Bluetooth technology.[2]

On August 1, 2011, CSR acquired Zoran Corporation, which owned U.S. Patent No. 6,792,247 ("the '247 patent"). Zoran assigned the '247 patent to CSR on October 4, 2011. On October 5, 2011, CSR filed this lawsuit against Bandspeed, alleging that it had sold products that infringe upon the '247 patent in Arizona and elsewhere. (Doc. 1). The '247 patent, titled "Co-Located Frequency-Agile System and Method" is also a system for optimizing frequency hopping techniques used in Bluetooth technology.

Defendant has filed a motion to dismiss for lack of personal jurisdiction or improper venue, or alternately to transfer venue to the Western District of Texas. (Doc. 9). In its reply, Defendant raised two issues not discussed in the motion, and Plaintiff has moved to file a surreply. (Doc. 26)

---

[2] "Frequency hopping" describes a technique by which radio signals are sent via rapidly changing frequencies in order to avoid interference. The technique was originally developed and patented by the actress Hedy Lamarr and the avant-garde composer George Antheil as patent number 2,292,387 in 1942 as a means of providing the Allied war effort with a means of evading Nazi efforts to jam communications. *See generally* Richard Rhodes, Hedy's Folly: the Life and Breakthrough Inventions of Hedy Lamarr, the Most Beautiful Woman in the World (Doubleday 2011). Neither Ms. Lamarr, Mr. Antheil, nor their estates are parties to this litigation.

**DISCUSSION**

**I.     Legal Standard**

     **A.     Dismissal for Lack of Personal Jurisdiction**

Personal jurisdiction in patent cases is decided under Federal Circuit law, rather than that of the regional circuit in which the case arose. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). A court may assert general jurisdiction over a defendant whose contacts with the forum state are "continuous and systematic," regardless of whether those contacts form the basis of the complaint. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). A court lacking general jurisdiction may nevertheless exercise personal jurisdiction over a party if it has "specific jurisdiction" over a party that "deliberately has engaged in significant activities within a state or has created continuing obligations between himself and residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (internal quotations omitted).

Under Federal Circuit law, a district court can exercise specific jurisdiction over a party that would be subject to the jurisdiction of a court of general jurisdiction in the forum state. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). The Arizona long-arm statute permits state courts to exercise personal jurisdiction "to the maximum extent permitted by this state and the Constitution of the United States." ARIZ. R. CIV. P. 4.2. This court therefore has personal jurisdiction over Defendants if the maintenance of this suit "does not offend traditional notions of fair play and substantial justice" embodied in the Due Process Clause.[3] Although the burden is on the plaintiff to show that jurisdiction is proper, in the absence of an evidentiary hearing pleadings are construed in the plaintiff's favor and the plaintiff "need only to make a *prima facie* showing that

---

[3] The Federal Circuit has held that since patent cases arise under federal law, rather than state law, the Due Process Clause at issue is the Due Process Clause of the Fifth, rather than the Fourteenth, Amendment. Nevertheless, it has described the difference as "purely academic because this court, though professing reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of *International Shoe*." *Red Wing Shoe*, 148 F.3d at 1358 n.*.

defendants are subject to personal jurisdiction." *Electronics for Imaging Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

In determining whether exercising specific jurisdiction over an out-of-state defendant comports with due process in a patent case, a court evaluates whether "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities in the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Electronics for Imaging*, 340 F.3d at 1350. A defendant does not purposefully direct its activity towards the forum state by creating a web page that may be accessed when it has "conducted no commercial activity over the Internet in [the forum]." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). On the other hand, shipping a product to a state qualifies as purposeful direction under the law of the Federal Circuit, and if that product is the alleged infringing product, the first two prongs of the specific jurisdiction test are met. *See Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1205 (Fed. Cir. 2003) ("Personal jurisdiction over out-of-state defendant existed with respect to a trademark infringement claim when the defendant's products that allegedly infringed plaintiff's trademark had been shipped to forum state from out of state.") (discussing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991)). Even if the first two prongs are met, a court cannot exercise personal jurisdiction if the out-of-state defendant presents a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

**B.     Dismissal for Improper Venue**

Venue is proper in a patent case "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement *and* has a regular and established place of business." 28 U.S.C. § 1404(b) (emphasis added). Despite the statute's requirement that a defendant have a regular and established place of business, the Federal Circuit has held that when a defendant is a corporation, personal jurisdiction alone is adequate to support venue. ("Venue in a patent action against a corporate defendant exists whenever there is personal jurisdiction.") *Trintec Indus., Inc. v. Pedre Promotional Prods. Inc.*, 395 F.3d 1275,

1280 (Fed. Cir. 2005). In patent cases where a defendant moves to dismiss both on the grounds of personal jurisdiction and venue, therefore, "no separate venue inquiry is necessary." *Id.*

### C. Transfer

The Court may transfer a case "to any other district or division where it might have been brought" when such transfer serves "the convenience of parties and witnesses" and is "in the interest of justice." 28 U.S.C. § 1404(a). Even in patent cases, transfer motions are governed by "the law of the regional circuit in which [a district court] sits." *Winner Intern. Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000). The district court considers multiple factors in determining whether to transfer, and ultimately decides whether transfer is proper based on an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Francising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Defendant has the burden of showing that the action should be transferred, and "must make a strong showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see N. Acceptance Trust v. Gray*, 423 F.2d 653, 654 (9th Cir. 1970) (stating that "substantial weight" should be given to the plaintiff's choice of forum); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (stating that "the plaintiff's choice of forum should rarely be disturbed").

## II. Analysis

### A. Personal Jurisdiction

Plaintiff does not contend that Defendant is subject to general jurisdiction in Arizona, so personal jurisdiction will only lie if the Arizona state courts could exercise specific jurisdiction over Defendant. Defendant claims that the device it sold in Arizona in 2008, a starter kit identified as AMAP3100AG-VC-NFR, is not the same device as AMAP3100AG-VC, the device at issue, while Plaintiff notes that the only difference is the suffix "NFR," which Defendant concedes stands for "Not for Resale." (Doc. 10 ¶ 7). Although Defendant's current website does not offer products directly for sale, Plaintiffs have offered a printout of a previous version of the website, which Defendant does not dispute, advertising the 3100AG

1  access point and featuring a "buy now" link, suggesting that customers could purchase the
2  access point directly over the internet in 2008. (Doc 18-1, Ex. 2). Defendant acknowledges
3  that the product was sold in Arizona; construing the pleadings and affidavits in Plaintiff's
4  favor, the product was one of the devices at issue and was sold directly through the
5  Defendant's website to an Arizona purchaser..

6  Such a sale provides minimum contacts adequate to support personal jurisdiction. In
7  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994), the
8  Federal Circuit found personal jurisdiction to be proper when "defendants purposefully
9  shipped the accused fan into [the forum state] through an established distribution channel."
10 *See also Systemation, Inc. v. Engel Indus., Inc.*, 194 F.3d 1331 (table), 199 WL 129640, at
11 *4 (Fed. Cir. 1999) ("We hold the district court properly asserted personal jurisdiction over
12 Engel based on its sale of an allegedly infringing machine to Ritchie in Massachusetts.").

13 It is true that the Ninth Circuit, in the non-patent context, has found that a single sale
14 over the internet does not give rise to personal jurisdiction. In *Boschetto v. Hansing*, 539 F.3d
15 1011, 1017 (9th Cir. 2008), the Ninth Circuit found that an individual who sold a car through
16 the E-bay online auction site was not subject to personal jurisdiction in California, where the
17 purchaser resided. The court emphasized that the sale was a "one-shot affair," and overtly
18 distinguished cases in which a supplier sells items through its own website. *Id.* In those cases,
19 it wrote, "the nature of the website has jurisdictional significance because the website allows
20 the defendant to maintain some ongoing contact with the forum state (as well as every other
21 state that can access the site)." *Id.* at 1018.

22 District courts within the Ninth Circuit have found that isolated sales of accused
23 products do not give rise to personal jurisdiction, but have always emphasized that such
24 products were not purchased directly through an interactive website. In *Hayden v. Shin-Etsu*
25 *Handotai America, Inc.*, 80 F. Supp. 2d 119, 1122 (D. Or. 1999), the Oregon district court
26 found that a single sale was not adequate to support personal jurisdiction "[i]n the absence
27 of a distribution channel, a local sales force, or local advertising." The decision noted that
28 the vendor's "website, which has never generated any orders, including any from Oregon,

- 6 -

is not a sufficient contact upon which to base personal jurisdiction." 80 F. Supp. 2d at 1123. Likewise, the Central District of California has found that "a single sale of the allegedly infringing product worth merely $8,800" does not provide minimum contacts sufficient to support personal jurisdiction. *New Tech Stainless Steel Prods. Co. Ltd. v. Sun Mfg. Corp.*, CV-04-1182 (RGK), 2004 WL 1773416, at *3 (Jul. 20, 2004). Again, however, the court emphasized that the defendant's website did not allow parties to place orders, and that a "defendant that 'conducts business' over the Internet with the residents of the forum will usually be found subject to that forum's jurisdiction." *Id.* (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D.Pa. 1997)).

Here, the accused product was sold directly to an Arizona consumer through the Defendant's interactive website. Such a sale is distinguishable from those in cases where the defendant hosts a purely passive website and fortuitously sells a product in the forum state. It is further distinguished from cases where online sales of unrelated products have been found inadequate to support personal jurisdiction. *See*, *e.g.*, *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed. Appx. 322, 338 (Fed. Cir. 2003) (sale of non-infringing items through website does not give rise to personal jurisdiction). Since the consumer was able to purchase the product directly from Defendant by visiting Defendant's website and clicking on the "buy now" link, the internet and whichever carrier Defendant used to ship the product served as a distribution network, and the transaction provided the minimum contacts necessary to satisfy the first two prongs of the test for specific jurisdiction.

In its reply, Defendant argues additionally that because Plaintiff did not acquire Zoran until 2010, exercising personal jurisdiction over Defendant based on a 2008 sale would violate Due Process. The Court need not consider this argument, because "[i]ssues raised for the first time in the reply brief are waived." *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996).

Additionally, Defendant claims that a December 23, 2011 order by the District Court in the Western District of Texas required Plaintiff to bring the present action as a counterclaim. (Doc. 23 at 1–2). Since this order was issued after Defendant filed its original

1 motion, the argument will be considered, but Plaintiff's counterargument in its sur-reply will
2 also be considered. In this regard, Plaintiff's motion for leave to file a sur-reply is granted.
3 The Court has read Judge Yeakel's order, which required CSR to answer Bandspeed's
4 amended complaint in the Western Texas litigation by January 23, 2012, and required the
5 answer to "contain all defenses and counterclaims known to any such party regarding any
6 issue in either original case and implead any chip manufacturer or supplier not now a party
7 to this case against whom any party desires to assert a claim." (Doc. 24-1, Ex. A at 5).
8 Defendant makes no effort to explain why a claim regarding different patents would be a
9 counterclaim "regarding any issue in either original case," and in fact omits this language
10 when it quotes the order. The order in the Texas litigation does not bear on the personal
11 jurisdiction inquiry.

12 Since Plaintiff has shown that Defendant purposefully directed its activity towards
13 Arizona, and that the suit arises out of that directed activity, the burden shifts to Defendant
14 to show that exercising personal jurisdiction is "reasonable and fair." *Electronics for*
15 *Imaging*, 340 F.3d at 1350. In determining whether exercising jurisdiction is reasonable and
16 fair, a court considers "(1) the burden on the defendant, (2) the interests of the forum state,
17 (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in
18 obtaining the most efficient resolution of controversies, and (5) the shared interest of the
19 several states in furthering substantive social policies." *Id.* at 1350.[4]

20 These factors may weigh generally against litigation in Arizona, but not so heavily as
21 to constitute a violation of Due Process. Defendant is based in Austin, Texas, and while
22 traveling to Phoenix would create some burden, the burden of traveling from a nearby state
23 is not unreasonable. Arizona has an interest in enforcing patent laws in its geographic
24 boundaries, and Plaintiff, which has an office here, has an interest in obtaining relief in

---

[4] Defendant's reliance on the alternative factors articulated in the Ninth Circuit in the non-patent case *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) is misplaced. In patent cases, the law of the Federal Circuit, not the regional circuit in which the events that gave rise to the incident took place, governs. *Akro*, 45 F.3d at 1543.

- 8 -

1  Arizona. The judicial system's interest in obtaining an efficient resolution weighs strongly
2  in favor of litigating in Texas, since parties are currently engaged in related patent litigation
3  there. The shared interest of the several states is a neutral factor. In sum only one factor
4  weighs strongly in favor of litigating the case in Texas, and considered as a whole these
5  factors do not suggest that this case presents "the rare situation in which the plaintiff's
6  interest and the state's interest in adjudicating the dispute in the forum are so attenuated that
7  they are clearly outweighed by the burden of subjecting the defendant to litigation within the
8  forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.* 21 F.3d 1558, 1568 (1994) (citing
9  *Burger King*, 471 U.S. at 477).

10  Construing the pleadings and affidavits in favor of Plaintiff, it has met its *prima facie*
11  burden of showing that this court may exercise personal jurisdiction over Defendant
12  sufficient to defeat a motion under Rule 12(b)(2) at this stage.

### B. Dismissal for Improper Venue

Since the court has personal jurisdiction over Defendant, the case may not be dismissed for improper venue under Rule 12(b)(3). *See Trintec Indus., Inc. v. Pedre Promotional Prods. Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005). ("Venue in a patent action against a corporate defendant exists whenever there is personal jurisdiction.").

### C. Transfer

Neither party disputes that the action might have been brought in Texas, and Plaintiff provides documentation that Defendant sold the accused items in California, suggesting that it might have been brought there as well. (Doc. 18, Ex. 16–18). The Ninth Circuit has adopted the following non-exclusive list of factors for courts to consider when ruling on a motion to transfer: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211

1 F.3d at 498. The first factor is not relevant to the case at hand, since the parties did not
2 negotiate any agreements. The second factor is neutral, since any court hearing the case will
3 be relying on federal patent law. The third factor weighs in favor of keeping the case in
4 Arizona, where Plaintiff filed the case. The fourth factor weighs slightly in favor of transfer.
5 Defendant's sole contact with Arizona was selling one device over the internet to a purchaser
6 here, and while Plaintiff has an office in Phoenix, it is one of eight it maintains in the U.S.
7 in addition to others "worldwide." (Doc. 18 at 3). The fifth factor is neutral—while
8 Defendant sold one item in Phoenix, Plaintiff concedes that it offered the items for sale in
9 stores in California, and Defendant presumably sold its products elsewhere as well. (Doc. 18,
10 Ex. 16–18). The three factors related to inconvenience weigh slightly in favor of transfer, but
11 not decisively so, because "modern transportation and communication have made it much
12 less burdensome for a party sued to defend itself outside its home state." *Patent Rights*
13 *Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1370 (Fed. Cir. 2010)
14 (internal quotations omitted). On the whole, these eight factors are essentially neutral.

15 Nevertheless, the *Jones* factors are not exclusive, and do not include judicial economy,
16 a factor that both parties discuss at length. In cases where "several highly technical factual
17 issues are presented and the other relevant factors are in equipose, the interest of judicial
18 economy may favor transfer to a court that has become familiar with the issues." *Regents of*
19 *the University of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). This
20 district has previously transferred patent cases to districts where the parties are engaged in
21 ongoing patent litigation, even when the dispute "does involve different patents from those
22 at issue" in the other case, so long as the cases "involve the same parties, the same
23 technology, and competing products in the same relevant markets." *Advanced Semiconductor*
24 *Materials v. Applied Materials, Inc.*, 30 USPQ2d 1553, 1554 (D. Ariz. 1993). The
25 intellectual properties at issue in the related cases need not be identical for judicial economy
26 to merit a transfer—another district court has transferred a trademark case to a district where
27 the parties were involved in ongoing patent litigation. *See Smiths Indus. Medical Sys., Inc.*
28 *v. Ballard Medical Prods., Inc.*, 728 F. Supp. 6, 7 (D.D.C. 1989).

Here, the efforts expended by the Western District of Texas to become familiar with the technology at issue weighs decisively in favor of transfer. The Texas litigation has been ongoing since August of 2009. The judge in that litigation has held a *Markman* hearing, including a tutorial on the technology and the patents involved. On August 12, the judge issued a 23-page Claim Construction Order describing the technology, patents-in-suit, and disputed terminology in the patents. (Doc. 11, Ex. 9). Plaintiffs emphasize that the patents-in-suit are different than those in the Texas litigation, and note that Defendant previously argued against transfer in the Eastern District litigation, claiming at the time that "it is [Bandwith]'s intention to assert numerous claims of patents in suit that are not called out in the Bluetooth standard." (Doc. 18-4, Ex. 9).

Some district courts have refused to transfer cases when the same parties were engaged in ongoing patent litigation in other districts. In *NETGEAR, Inc. v. Ruckus Wireless, Inc.*, CV-10-999 (SLR), 2011 WL 3236043, at *3 (D. Del. Jul. 28, 2011), the court declined to transfer a case to California when the patents litigated there "originated from different companies, have different inventors, and are of different patent families from the patents-in-suit." The California Judge had not expended significant resources in the other *NETGEAR*, cases however, because they had "been stayed pending resolution of an *inter partes* reexamination proceeding initiated by plaintiff in the United States Patent Office." *Id.* at *1. Here too, transfer based solely on the fact that the technology at issue in both cases is generally related to frequency hopping may not be merited—as noted above, frequency hopping has been patented for seventy years, and presumably now encompasses more variations than it did when first patented by Lamarr and Antheil. At issue, however, is not merely the similarity of the technology, but the extensive judicial resources that have already been expended in the Western District of Texas to ensure that claims involving that technology are resolved promptly. Likewise, while some convenience factors in fact weigh in favor of transfer to the Central or Southern Districts of California, Plaintiff has not indicated that the Central District of California has yet conducted substantial research to become familiar with the technology at issue. Like the Texas litigation, that case involves

- 11 -

patents that parties now claim are related, but which are not the same patents as those in the instant case. (*See* Doc. 18-8, Ex. 21, indicating that the patents-in-suit in the California litigation are U.S. Patent Nos. 6, 933, 886 and 6, 297,771). The only district in which substantial judicial resources have been expended in pursuit of a swift resolution to related patent cases between these two parties is the Western District of Texas. For that reason, judicial economy merits a transfer to that district.

## CONCLUSION

Because Defendant sold the accused device through its own website to a customer in the District of Arizona, the court may exercise specific jurisdiction over it based on that claim, and the case will not be dismissed for lack of personal jurisdiction or improper venue. The bulk of the factors considered for transfer, however, weigh generally in favor of transfer to the Western District of Texas. The factor of judicial economy weighs decisively in favor of transfer. This case involves a dispute over a patent that is closely related to patents that are currently being litigated by the same parties in the Western District of Texas. The court in Texas has spent two years with the case, has consolidated another case with it, and has spent considerable resources becoming familiar with the technology at issue. Although the patent is indeed not the same as the patents in that suit, the effort that the Western District has spent learning the underlying technology will assist it in resolving this matter, and thereby preserve judicial resources. This case will be transferred to the Western District of Texas.

**IT IS THEREFORE ORDERED**:

1. Defendant's Motion to Dismiss or Transfer Venue (Doc. 9) is **granted in part and denied in part**.

1. Plaintiff's Motion to File a Sur-Reply (Doc. 26) is **granted in part**.

3. The Clerk of Court is instructed to **transfer this case** to the Honorable Lee Yeakel in the Western District of Texas.

DATED this 5th day of April, 2012.

*A. Murray Snow*

G. Murray Snow
United States District Judge

- 12 -